**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRY SCHUBERT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, and MARCHAND SNYMAN,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Harry Schubert ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Northern Dynasty securities between September 16, 2013 and February 13, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Northern Dynasty engages in the exploration and development of mineral properties in the United States. Its principal property is the Pebble copper-gold-molybdenum mineral project ("Pebble Project") located in southwest Alaska.

3.      Founded in 1983, the Company was formerly known as "Northern Dynasty Explorations Ltd." and changed its name to Northern Dynasty Minerals Ltd. in October 1997. Northern Dynasty is headquartered in Vancouver, Canada and the Company's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "NAK."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Pebble Project carries a negative net present value; (ii) the Pebble Project is not commercially viable; and (iii) as a result of the foregoing, Northern Dynasty's public statements, as well as Defendants' statements about the Company's business, operations and prospects, were materially false and misleading at all relevant times.

5.      On February 14, 2017, Kerrisdale Capital Management released an article about Northern Dynasty alleging that the Company's main asset, the low-grade Pebble deposit, is not commercially sustainable, that the Pebble project has a negative present value, and that for several

years the Company has been concealing this information from the investing public. The report

stated, in relevant part:

> *Based on our discussions with multiple people directly involved in planning the Pebble project, we believe the answer is simple: the upfront capital costs necessary to build and operate the mine are so onerous that the mine isn't commercially viable. Indeed, Anglo American - Northern Dynasty's former partner on the Pebble project, before it exited in 2013 - concluded that, under a range of scenarios and despite years of attempted optimization, building the mine would destroy billions of dollars of value. (Moreover, Anglo drew this conclusion based on assumed selling prices for key metals that are significantly higher than such prices today.) According to our sources, Northern Dynasty knew about the negative results of Anglo's analysis, but cut it short to avoid having to disclose it to the public - pursuing what one engineer described to us as "a hidden agenda of telling a good story." In the past decade, Northern Dynasty has hired at least two major engineering firms to prepare preliminary feasibility studies of Pebble, laying out its economics in detail, yet it has failed to publish their findings - because they were damning.*

> \*\*\*

> *The Pebble deposit is not commercially viable. Though very large, the Pebble deposit is relatively low-grade, meaning that large amounts of raw material would need to be processed to extract small amounts of valuable substances like copper, gold, and molybdenum. But this processing requires a great deal of infrastructure, and the pristine Bristol Bay region where Pebble is located has almost none.*

> Mining Pebble would thus entail building a large power plant, a deep-water harbor, an 86-mile-long road, an equally long set of pipelines for moving copper concentrate, multiple dams that would rank among the largest on the planet, potentially a floating liquefied natural gas platform, and more – all in a harsh natural environment subject to extremes of temperature and precipitation, not to mention earthquakes. Though, in the words of one person familiar with Pebble, Northern Dynasty consistently *"tried to underplay the issues," in reality the project was, in the words of another, "pushing the boundaries of engineering. Actually it's quiet an interesting project due to all the challenges…but from an investment perspective it's obviously risky."*

> *Sure enough, in 2013 Anglo American, Northern Dynasty's former partner, withdrew from the project, walking away from more than $500 million in sunk costs and making no effort to renegotiate the terms of its deal instead of simply exiting*. Though some Northern Dynasty bulls now assume Anglo's decision stemmed entirely from regulatory concerns that will now abate, Northern Dynasty itself explicitly denied that the EPA had anything to do with it. Out discussions with

people directly involved in the project confirmed that, as one crisply put it, ***"Anglo exited because of economics."***

Anglo personnel viewed Northern Dynasty's economic analyses as unrealistic and overly optimistic, even speculating that concern for the company's stock price was pushing Northern Dynasty management to make short-sighted choices. ***In Anglo's more sober view, Pebble's upfront capital costs would be more than 100% higher than what Northern Dynasty has suggested, while operating costs would be roughly 20% higher.*** These differences amounted to many billions of dollars, which – for a project that Northern Dynasty's own 2011 preliminary assessment accorded an after-tax NPV of only $4 billion – easily drove the value of the project into negative territory, even before adjusting for its unusual regulatory and reputational risks. ***We believe Northern Dynasty knew about Anglo's analysis but suppressed it. As one source told us (and a second source confirmed):***

> ***What's interesting is, as we were about to issue our PFS [prefeasibility study] that we came up [with] in 2012 or so, they [Northern Dynasty] stopped us finishing that PFS. We weren't supposed to issue the report, you see. We were coming up with 13 billion in capital. By contrast, Northern Dynasty's preliminary assessment indicated that Pebble's initial capital costs would be only $4.7 billion.***

In short, one of the world's largest and most experienced mine operators concluded after years of study that the Pebble project was so unlikely to earn its cost of capital that it wasn't worth trying; one former Anglo executive ruefully complained, with hindsight, that ***"he would never have touched Pebble at all."***

<p style="text-align:center">***</p>

While Northern Dynasty attempted to spin Anglo's exit as a signal about Anglo's troubles, not Pebble's, it explicitly shot down the notion that regulatory concerns drove the decision. In response to one worried investor who asked if the company found the timing of Anglo's exit "curious" in light of a recent EPA visit, management responded, "I don't think the EPA's visit to the site had anything to do with it," noting that the visit was "seen by everybody as pretty positive." The notion that Anglo withdrew because of the EPA's veto – which hadn't even been set into motion yet – is baseless revisionist history. ***As one former Anglo engineer told us, "Anglo exited because of economics."***

Notwithstanding Northern Dynasty's protests, investors clearly took Anglo's exit as a shockingly negative message about Pebble; the project's implied value fell by ~70% over the days following the announcement. To better understand Anglo's decisions, we spoke with multiple engineers and others directly involved in planning the Pebble project. What they told us confirmed what reasonable investors had already concluded back in 2013: key Anglo personnel came to view Pebble as fundamentally flawed and unworkable, with capital and operating costs far in

excess of what Northern Dynasty hoped for. In fact, engineers working on the project kept finding, after considering a wide range of possible mine designs over a period of years, that ***Pebble's net present value was negative, to the tune of multiple billions of dollars – all while assuming long-term metal prices that exceed prices today. Of course, using lower prices would generate an even more negative NPV, making investing in Pebble look like an even worse idea. Strikingly, two sources told us that, while Anglo's final analysis of the project was effectively complete by 2013, Northern Dynasty insisted that it be terminated prematurely and not officially presented to the Pebble Partnership's highest-ranking leaders. Why?***

***Based on our discussions, Anglo personnel believed that Northern Dynasty wanted to avoid disclosure requirements under Canadian securities law. In other words, according to people directly involved in the Pebble project, Northern Dynasty knew that the Anglo analysis had found that Pebble was worse than worthless but did everything it could to keep that information out of shareholders' hands. How could it be that such a large mineral deposit isn't worth mining? The answer is as simple as the analysis was complex: cost. As one person involved with Pebble put it,***

> ***That thing is* big*. It's a massive area. Everything on Pebble was done on a grand scale. I've never seen a mine like that…The Pebble project was pushing the boundaries of engineering.***

 (Emphasis added).

6.    On this news, Northern Dynasty's share price fell $0.68, or 21.38%, to close at $2.50 on February 14, 2017.

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78n(e) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Northern Dynasty's stock trades on the NYSE, located within this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

12.     Plaintiff, as set forth in the attached Certification, acquired Northern Dynasty securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Northern Dynasty is headquartered in Vancouver, Canada. The Company's principal executive offices are located at 1040 West Georgia Street, 15th Floor Vancouver, Canada V6E 4H1.  Northern Dynasty's shares trade on the NYSE under the ticker symbol "NAK."

14.     Defendant Ronald William Thiessen ("Thiessen") has served at all relevant times as the Company's Chief Executive Officer ("CEO), President and Director.

15.     Defendant Marchand Snyman ("Snyman") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Northern Dynasty engages in the exploration and development of mineral properties in the United States. Its principal property is the Pebble copper-gold-molybdenum mineral project located in southwest Alaska.

18.     Northern Dynasty was founded in 1983. Northern Dynasty formerly held an interest in a small-scale gold mine in Nevada but witnessed its cash flow steadily diminish as a consequence of a long series of fruitless exploration programs, both under its old leadership and under the aegis of Hunter Dickinson Inc., a private firm that provides multiple services to companies in the mining sector. Northern Dynasty remains part of the Hunter Dickinson family to this day, paying it around $5 million a year and drawing most of its key decision-makers from Hunter Dickinson's ranks.

19.     In 2001, Hunter Dickinson acquired options on the Pebble deposit from the large mining company Teck, then known as Teck Cominco and, in a complex series of transactions, ultimately transferred those options to Northern Dynasty. Over the next several years, Northern Dynasty paid Teck $14 million plus a percentage of potential future mine profits to gain full control over Pebble.

20.     In 2007, Northern Dynasty partnered with Anglo American Pebble LLC ("Anglo") a wholly-owned United States subsidiary of Anglo American PLC, to develop the Pebble Project, through the Pebble Limited Partnership. Anglo was to supply the partnership with $1.5 billion in funding in exchange for 50% ownership. Anglo invested $573 million before abandoning the project, thereby returning complete ownership to Northern Dynasty.

**Materially False and Misleading Statements Issued During the Class Period**

21.     The Class Period begins on September 16, 2013, when Northern Dynasty issued a press release entitled "Anglo American Withdraws from Pebble Project," announcing that Anglo withdrew from the Pebble Project.  The press release stated in relevant part:

**Anglo American Withdraws from Pebble Project**

**September 16, 2013, Vancouver, BC** – Northern Dynasty Minerals Ltd. (TSX: NDM; NYSE MKT: NAK) ("Northern Dynasty" or the "Company") reports that Anglo American (US) Pebble LLC ("AA Pebble"), a wholly owned US subsidiary of Anglo American plc ("Anglo American"), has given notice under the Pebble limited partnership agreement that it is withdrawing from the Pebble copper project in Alaska.

Mark Cutifani, Chief Executive of Anglo American, said: "Despite our belief that Pebble is a deposit of rare magnitude and quality, we have taken the decision to withdraw following a thorough assessment of Anglo American's extensive pipeline of long-dated project options. Our focus has been to prioritise capital to projects with the highest value and lowest risks within our portfolio, and reduce the capital required to sustain such projects during the pre-approval phases of development as part of a more effective, value-driven capital allocation model."

As of June 30, 2013, AA Pebble has funded US$541 million of expenditure on the Pebble Project. Following the AA Pebble withdrawal, PLP will proceed under the sole ownership of Northern Dynasty.

In light of the parties' shared desire to ensure an orderly exit, the detailed aspects of AA Pebble's withdrawal from the Pebble project are being developed and implemented.

Northern Dynasty CEO Ron Thiessen commented ***"Northern Dynasty will again own 100% of one of the world's most important copper & gold resources and will have the benefit of $541 million worth of expenditures, which opens the door to a number of exciting possibilities for Northern Dynasty and its shareholders and the Pebble Project and its stakeholders. Northern Dynasty and the Pebble Partnership have both the expertise and resources necessary to advance the Pebble Project."***

(Emphasis added.)

22.     On May 21, 2014, Northern Dynasty issued a press release, also attached as Exhibit 99.1 to Form 6-K filed with the SEC on May 28, 2014.  The press release was a letter to

8

shareholders from Defendant Thiessen, the Company's President and CEO, which stated in relevant part:

> May 21, 2014
>
> Dear Fellow Shareholder,
>
>                                \*\*\*
>
> For Northern Dynasty, like most companies active in the global mining sector, 2013 was a challenging year. Continued weak market conditions contributed to a host of travails - including flagging share prices, declining capital investment, sluggish M+A activity, divestitures and wholesale senior management changes.
>
> For Northern Dynasty, this translated to our major partner at Pebble - Anglo American plc - walking away from the project last December due to its own capital allocation priorities, despite having invested nearly US$600 million over the previous six years.
>
> Difficult news in a difficult time. But in the same way that the seeds for the next great bull market in mining stocks are being sown by the lack of investment in new projects and new productive capacity today, so too ***we believe will Anglo's departure ultimately lead to the next great value opportunity for our shareholders.***
>
> Northern Dynasty now holds a 100% interest in the Pebble Limited Partnership and the Pebble Project. Pebble remains among the most valuable mineral properties in the world. In part due to Anglo's investment, the project has now assembled an unparalleled scientific database that is more than sufficient to both design and permit a world-class mine at Pebble. Indeed, Pebble was in the final stages of preparing to initiate federal and state permitting under the National Environmental Policy Act (NEPA) when Anglo American announced its intention to withdraw last fall.

(Emphasis added.)

23.     On May 15, 2015, Northern Dynasty filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 20-F"). For the fiscal year, Northern Dynasty reported a net loss of $31.35 million, or $0.33 per diluted share, on revenue of $0, compared to a net loss of $6.27 million, or $0.03 per diluted share, on revenue of $0 for fiscal year 2013.

24.      In the 2014 20-F, Northern Dynasty stated in pertinent part:

**THE PEBBLE PROJECT**

The Company's business is the exploration and advancement towards feasibility, permitting and ultimately development of a copper gold molybdenum mineral resource in Alaska, USA known as the "Pebble Project".

25.      The 2014 20-F contained signed certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.      On May 2, 2016, Northern Dynasty filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 20-F").  For the fiscal year, Northern Dynasty reported a net loss of $33.83 million, or $0.23 per diluted share, on revenue of $0, compared to a net loss of $31.35 million, or $0.33 per diluted share, on revenue of $0 for fiscal year 2014.

27.      In the 2015 20-F, Northern Dynasty stated in relevant part:

**THE PEBBLE PROJECT**

The Company's business is the exploration and advancement towards feasibility, permitting and ultimately development of a copper-gold-molybdenum-silver mineral resource in Alaska, USA known as the "Pebble Project".

28.      The 2015 20-F contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2015 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.      On May 16, 2016, Northern Dynasty issued a press release, also attached as Exhibit 99.1 to Form 6-K filed on May 25, 2016 with the SEC.  The press release was a letter to shareholders from Defendant Thiessen, which stated in relevant part:

May 16, 2016

10

Dear Fellow Shareholder,

***

For Northern Dynasty, like most companies active in the global mining sector, 2015 was yet another challenging year. Weak market conditions prevailed, as exhibited by flagging share prices, declining capital investment and sluggish M&A activity, as the industry suffered through the longest bear market in recent memory.

The better news is that the green shoots of recovery appear to be breaking through. Capital is finally being raised to fund good projects, M&A has returned, and the mining subsector has enjoyed a strong start to 2016. Your shares in Northern Dynasty have participated to some extent in this rally but I believe there is much more potential to reward your patience as our strategy unfolds.

As you know, Northern Dynasty holds a 100% interest in the Pebble Limited Partnership (PLP) and the Pebble Project. Pebble remains among the most valuable mineral properties ever discovered, including:

- *6.44 billion tonnes of measured and indicated resources grading 0.40% copper, 0.34 g/t gold, 240 ppm molybdenum and 1.66 g/t silver containing 57 billion pounds of copper, 70 million ounces of gold, 3.4 billion pounds of molybdenum and 344 million ounces of silver; and*

- *4.46 billion tonnes of inferred mineral resources grading 0.25% copper, 0.26 g/t gold, 222 ppm molybdenum and 1.19 g/t silver, containing 24.5 billion pounds of copper, 37 million ounces of gold, 2.2 billion pounds of molybdenum and 170 million ounces of silver.*

*By any measure, Pebble is world class – representing both the largest undeveloped copper resource and the largest undeveloped gold resource in the world.*

More than $USD750 million has been invested to advance the Pebble Project. We have assembled an unparalleled database of environmental science and technical studies to support design and permitting of a world class mine. *Just one measure of the value of that investment is that replicating the extensive drilling activity completed at Pebble to date would alone cost more than USD $200 million.*

***

*Overall we continue to make steady and significant progress*. We believe the rule of law in America will prevail, and that Pebble will ultimately be judged by federal and state regulators and the people of Alaska on its scientific merits and on the basis of an *Environmental Impact Statement* – the backbone of an honest permitting process. *Going forward we are optimistic that the future will be less about protecting your asset and more about advancing it.*

11

*There are several major milestones that lie ahead, in 2016 and beyond, that I believe offer the prospect of beginning to realize the true potential of the Pebble Project.* You can be sure that we are working extremely hard to reward the considerable patience of our shareholders and supporters.

(Emphasis added.)

30.     The statements referenced in ¶¶ 21-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Pebble Project carries a negative net present value; (ii) the Pebble Project is not commercially viable; and (iii) as a result of the foregoing, Northern Dynasty's public statements, as well as Defendants' statements about the Company's business, operations and prospects, were materially false and misleading at all relevant times.

## The Truth Emerges

31.     On February 14, 2017, Kerrisdale Capital Management released an article about Northern Dynasty alleging that Northern Dynasty's main asset, the low-grade Pebble deposit, is not commercially sustainable and that for several years the Company has been concealing this information from the investing public that the Pebble project has a negative present value.  The report stated, in relevant part:

*Based on our discussions with multiple people directly involved in planning the Pebble project, we believe the answer is simple: the upfront capital costs necessary to build and operate the mine are so onerous that the mine isn't commercially viable. Indeed, Anglo American - Northern Dynasty's former partner on the Pebble project, before it exited in 2013 - concluded that, under a range of scenarios and despite years of attempted optimization, building the mine would destroy billions of dollars of value. (Moreover, Anglo drew this conclusion based on assumed selling prices for key metals that are significantly higher than such prices today.) According to our sources, Northern Dynasty knew about the negative results of Anglo's analysis, but cut it short to avoid having to disclose it to the public - pursuing what one engineer described to us as "a hidden agenda of telling a good story." In the past decade, Northern Dynasty has hired at least*

*two major engineering firms to prepare preliminary feasibility studies of Pebble, laying out its economics in detail, yet it has failed to publish their findings - because they were damning.*

<div align="center">***</div>

**The Pebble deposit is not commercially viable.** *Though very large, the Pebble deposit is relatively low-grade, meaning that large amounts of raw material would need to be processed to extract small amounts of valuable substances like copper, gold, and molybdenum. But this processing requires a great deal of infrastructure, and the pristine Bristol Bay region where Pebble is located has almost none.*

Mining Pebble would thus entail building a large power plant, a deep-water harbor, an 86-mile-long road, an equally long set of pipelines for moving copper concentrate, multiple dams that would rank among the largest on the planet, potentially a floating liquefied natural gas platform, and more – all in a harsh natural environment subject to extremes of temperature and precipitation, not to mention earthquakes. Though, in the words of one person familiar with Pebble, Northern Dynasty consistently **"tried to underplay the issues," in reality the project was, in the words of another, "pushing the boundaries of engineering. Actually it's quiet an interesting project due to all the challenges…but from an investment perspective it's obviously risky."**

**Sure enough, in 2013 Anglo American, Northern Dynasty's former partner, withdrew from the project, walking away from more than $500 million in sunk costs and making no effort to renegotiate the terms of its deal instead of simply exiting**. Though some Northern Dynasty bulls now assume Anglo's decision stemmed entirely from regulatory concerns that will now abate, Northern Dynasty itself explicitly denied that the EPA had anything to do with it. Out discussions with people directly involved in the project confirmed that, as one crisply put it, **"Anglo exited because of economics."**

Anglo personnel viewed Northern Dynasty's economic analyses as unrealistic and overly optimistic, even speculating that concern for the company's stock price was pushing Northern Dynasty management to make short-sighted choices. **In Anglo's more sober view, Pebble's upfront capital costs would be more than 100% higher than what Northern Dynasty has suggested, while operating costs would be roughly 20% higher.** These differences amounted to many billions of dollars, which – for a project that Northern Dynasty's own 2011 preliminary assessment accorded an after-tax NPV of only $4 billion – easily drove the value of the project into negative territory, even before adjusting for its unusual regulatory and reputational risks. **We believe Northern Dynasty knew about Anglo's analysis but suppressed it. As one source told us (and a second source confirmed):**

> **What's interesting is, as we were about to issue our PFS [prefeasibility study] that we came up [with] in 2012 or so, they**

> *[Northern Dynasty] stopped us finishing that PFS. We weren't supposed to issue the report, you see. We were coming up with 13 billion in capital. By contrast, Northern Dynasty's preliminary assessment indicated that Pebble's initial capital costs would be only $4.7 billion.*

In short, one of the world's largest and most experienced mine operators concluded after years of study that the Pebble project was so unlikely to earn its cost of capital that it wasn't worth trying; one former Anglo executive ruefully complained, with hindsight, that *"he would never have touched Pebble at all."*

<center>***</center>

While Northern Dynasty attempted to spin Anglo's exit as a signal about Anglo's troubles, not Pebble's, it explicitly shot down the notion that regulatory concerns drove the decision. In response to one worried investor who asked if the company found the timing of Anglo's exit "curious" in light of a recent EPA visit, management responded, "I don't think the EPA's visit to the site had anything to do with it," noting that the visit was "seen by everybody as pretty positive." The notion that Anglo withdrew because of the EPA's veto – which hadn't even been set into motion yet – is baseless revisionist history. *As one former Anglo engineer told us, "Anglo exited because of economics."*

Notwithstanding Northern Dynasty's protests, investors clearly took Anglo's exit as a shockingly negative message about Pebble; the project's implied value fell by ~70% over the days following the announcement. To better understand Anglo's decisions, we spoke with multiple engineers and others directly involved in planning the Pebble project. What they told us confirmed what reasonable investors had already concluded back in 2013: key Anglo personnel came to view Pebble as fundamentally flawed and unworkable, with capital and operating costs far in excess of what Northern Dynasty hoped for. In fact, engineers working on the project kept finding, after considering a wide range of possible mine designs over a period of years, that *Pebble's net present value was negative, to the tune of multiple billions of dollars – all while assuming long-term metal prices that exceed prices today. Of course, using lower prices would generate an even more negative NPV, making investing in Pebble look like an even worse idea. Strikingly, two sources told us that, while Anglo's final analysis of the project was effectively complete by 2013, Northern Dynasty insisted that it be terminated prematurely and not officially presented to the Pebble Partnership's highest-ranking leaders. Why?*

*Based on our discussions, Anglo personnel believed that Northern Dynasty wanted to avoid disclosure requirements under Canadian securities law. In other words, according to people directly involved in the Pebble project, Northern Dynasty knew that the Anglo analysis had found that Pebble was worse than worthless but did everything it could to keep that information out of shareholders' hands. How could it be that such a large mineral deposit isn't worth mining? The*

<center>14</center>

*answer is as simple as the analysis was complex: cost. As one person involved with Pebble put it,*

> *That thing is **big**. It's a massive area. Everything on Pebble was done on a grand scale. I've never seen a mine like that…The Pebble project was pushing the boundaries of engineering.*

(Emphasis added).

32.    On this news, Northern Dynasty's share price fell $0.68, or 21.38%, to close at $2.50 on February 14, 2017.

33.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Northern Dynasty securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Northern Dynasty securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Northern Dynasty or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Northern Dynasty;

- whether the Individual Defendants caused Northern Dynasty to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Northern Dynasty securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Northern Dynasty securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Northern Dynasty securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Northern Dynasty securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Northern Dynasty securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for Northern Dynasty securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Northern Dynasty's finances and business prospects.

47.    By virtue of their positions at Northern Dynasty, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Northern Dynasty securities from their personal portfolios.

49.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Northern Dynasty, the Individual Defendants had knowledge of the details of Northern Dynasty's internal affairs.

50.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Northern Dynasty.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Northern Dynasty's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Northern Dynasty securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Northern Dynasty's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Northern Dynasty securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51.   During the Class Period, Northern Dynasty securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Northern Dynasty securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Northern Dynasty securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Northern Dynasty securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

54.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, the Individual Defendants participated in the operation and management of Northern Dynasty, and conducted and participated, directly and indirectly, in the conduct of Northern Dynasty's business affairs.  Because of their senior positions, they knew the adverse non-public information about Northern Dynasty's misstatement of income and expenses and false financial statements.

56.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Northern Dynasty's financial condition and results of operations, and to correct promptly any public statements issued by Northern Dynasty which had become materially false or misleading.

57.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

public filings which Northern Dynasty disseminated in the marketplace during the Class Period concerning Northern Dynasty's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Northern Dynasty to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Northern Dynasty within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Northern Dynasty securities.

58.    Each of the Individual Defendants, therefore, acted as a controlling person of Northern Dynasty.  By reason of their senior management positions and/or being directors of Northern Dynasty, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Northern Dynasty to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Northern Dynasty and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Northern Dynasty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff hereby demands a trial by jury.

Dated:  April 4, 2017

<div style="margin-left:40%">

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

</div>

**Submission Date**
2017-02-23 11:36:18

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.     I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Northern Dynasty securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Northern Dynasty securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Northern Dynasty securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.     I declare under penalty of perjury that the foregoing is true and correct.


# Name


**Print Name**

Harry Schubert


# Acquisitions


**Configurable list (if none enter none)**
(see attached)

# Sales

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|---|---|---|
|  | none |  |

# Documents & Message



**Signature**

H. Schubert

**Full Name**

Harry Schubert



**NORTHERN DYNASTY MINERALS LTD (NAK)**                                    **Schubert, Harry**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 1/11/2017 | Purchase | 5,000 | $2.1000 |
| 1/24/2017 | Purchase | 1,150 | $3.2150 |
| 2/9/2017 | Purchase | 4,300 | $2.9400 |